TERIS, LLC; Op-Tech Environmental Services, Inc.;
and CSX Transportation, Inc. *v.* Teresa GOLLIHER, et al.

07-155                                         266 S.W.3d 730

Supreme Court of Arkansas
Opinion delivered November 1, 2007

*Compton, Prewett, Thomas & Hickey, LLP*, by: *Floyd M. Thomas, Jr.*, for appellant Teris, LLC.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Sherry P. Bartley*, for appellant Op-Tech Environmental Services, Inc.

*Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass, R. Christopher Lawson* and *Seth M. Haines*, for appellant CSX Transportation, Inc.

*Allen P. Roberts, P.A., John W. Walker, P.A., Vickery & Carroll, P.A.*, and *McMath Woods, P.A.*, for appellees.

DONALD L. CORBIN, Justice. This is an interlocutory appeal of the circuit court's order granting a motion for class certification pursuant to Ark. R. Civ. P. 23. Appellants Teris, L.L.C., Op-Tech Environmental Services, Inc., and CSX Transportation, Inc., argue that the trial court erred in granting a motion by Appellees seeking class certification in the instant matter because: (1) the class definition is not sufficiently definite and the identity of the class members is not ascertainable by reference to objective criteria; (2) the claims and defenses of the class representatives are not typical of the class; (3) common issues of law and fact do not predominate over individual issues; (4) a class action is not the superior method for adjudicating this controversy. This court assumed jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2(d). We reverse and remand.

On January 2, 2005, a series of explosions and fires occurred at the Teris hazardous waste storage and treatment facility in Union County, Arkansas. As a result, emergency personnel evacuated residents in an area north and east of the Teris facility. As the wind shifted, the evacuation area grew to include an area north and west of the facility. Later that afternoon, the evacuation area was further expanded, but before the evacuation could be completed, the order was rescinded. An area south of the facility that was in closest proximity to the actual explosions and fires was never subject to an evacuation order, but El Dorado's Fire Chief Bob McDaniel stated that most people in this area evacuated of their own volition. Some evacuees were allowed to return to their homes that same evening, while others were not allowed to return until the following day.

Appellees, twelve individuals who lived within the mandatory evacuation area, filed suit against Teris on January 4, 2005.[1] In their suit, they alleged both personal and property damages for negligence, strict liability, nuisance, and trespass as a result of the explosions and fires at Teris on January 2. On September 22, 2005, Appellees filed a Motion for Class Certification, seeking to certify a class composed of:

---

[1] Originally, there were sixteen individuals from the evacuated areas who filed suit against Teris, but four of those individuals were removed from the list of proposed class representatives following a hearing on the motion for class certification.

1. All persons eighteen (18) years of age or older on January 2, 2005, who on that date resided within the one hundred percent evacuation area; and

. 2. All persons eighteen (18) years of age or older on January 2, 2005, who on that date resided in close proximity to the one hundred percent evacuation area, who actually evacuated because of a reasonable belief that they were in imminent danger of death or serious injury from the explosions and fire if they remained.

Appellees filed an amended complaint, adding CSX Transportation and Op-Tech as parties. In their amended complaint, Appellees alleged that CSX hired Op-Tech to perform a cleanup of spilled chemicals resulting from a 2004 train derailment in New York, and that CSX and Op-Tech then packaged and shipped the chemicals to the Teris facility in El Dorado for disposal. According to the amended complaint, it was these chemicals that were the source of the explosions on January 2.

A hearing was held on April 27, 2006, regarding Appellees' motion for class certification. Appellees subsequently sought to amend the definition of the class as follows:

(1) all the adults, (2) who on January 2, 2005, (3) resided or occupied a business premise in Areas A, B, or C, as shown in Exhibit "1," and who, in fact, physically evacuated because of the fire and explosion event at Teris.

In an order entered on July 21, 2006, the circuit court granted Appellees' request for class certification pursuant to Rule 23, finding that Appellees had proven that the six requirements for class certification under Rule 23 had been satisfied. Specifically, and as is pertinent to the present appeal, the trial court found that the class was susceptible of precise definition by objective standards. The trial court also found that Appellees suffered dislocation or evacuation injuries that were of a relatively small magnitude and were typical to all class members. With regard to predominance, the trial court ruled that this was a mass-accident case similar to the situation addressed by this court in *Summons v. Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W.2d 240 (1991), and as such, that this case was particularly appropriate for class-action treatment, because Appellants' conduct resulting in the fires and explosions formed the basis of this action and affected all class members. The court further found that the element of

predominance was satisfied because there were numerous common questions of law and fact related to Appellants' duty to plaintiffs and proximate causation related to the evacuation, and the expenses stemming from that evacuation, and that these common questions predominated over any individual ones. Finally, the trial court concluded that the element of superiority was satisfied, as this case was an ideal one for class-action treatment because there are a large number of plaintiffs, each with relatively small amounts of damages, and common issues predominate over individual ones: From that order, comes the instant appeal.

Before analyzing the points on appeal, we note that the certification of a lawsuit as a class action is governed by Rule 23. The determination that the class-certification criteria have been satisfied is a matter within the broad discretion of the trial court, and this court will not reverse the trial court's decision absent an abuse of that discretion. *Johnson's Sales Co., Inc. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007); *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002). In reviewing a class-certification order, this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification. *Hicks*, 349 Ark. 269, 78 S.W.3d 58. However, this court will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Id.*

Rule 23 provides the requirements for class certification. Specifically, the following six requirements must be met before a lawsuit can be certified as a class action under Rule 23: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *Johnson's Sales*, 370 Ark. 387, 260 S.W.3d 273. In the present appeal, in addition to challenging the class definition, Appellants also challenge the trial court's findings with regard to typicality, predominance, and superiority. Remaining mindful of our standard in reviewing class-certification orders, we now turn to the issues on appeal.

As their first point on appeal, Appellants argue that the class-certification order should be reversed because the class definition is not sufficiently definite and the identity of the class members is not ascertainable by reference to objective criteria. Appellants allege that the trial court's order itself demonstrates the inherent deficiency in the class definition, as the class is defined in one instance by the definition originally submitted by Appellees, but is then defined according to the amended definition suggested

by Appellees. Additionally, Appellants argue that the class as defined requires a subjective inquiry in order to ascertain who is a proper class member.

Appellees counter that the definition is sufficiently definite, that there were no inconsistencies in the trial court's order, and that class members are easily identifiable through means of objective criteria. According to Appellees, even though the trial court's order uses two different descriptions for the class, they both define the same class. Moreover, according to Appellees, if this court were to determine that the two descriptions are inconsistent, this court should hold that the class is defined in accordance with the amended definition and include instructions that this definition be used henceforth.

In addressing the issue of class definition, this court has recently said:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 614, 232 S.W.3d 444, 448 (2006) (quoting *Hicks*, 349 Ark. at 280-81, 78 S.W.3d at 64-65). In *Ferguson v. The Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001), this court pointed out that clearly defining the class insures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded.

In the present case, there is a problem stemming from the fact that in paragraph eight of its order, the trial court under the section delineated as "Class Definition" defined the class according to the amended class definition advanced by Appellees, as:

> (1) all the adults who (2) on January 2, 2005, (3) resided or occupied a business premise in Areas A, B, or C, as shown in Exhibit

"1," and who, in fact, physically evacuated because of the fire and explosion event at Teris.

However, in concluding the order, the trial court stated that Appellees had met their burden of establishing the requirements of Rule 23 and certified a class defined as follows:

> a. All persons eighteen (18) years of age or older on January 2, 2005, who on that date resided within the mandatory evacuation area; and
>
> b. All persons eighteen (18) years of age or older on January 2, 2005, who on that date resided in close proximity to the mandatory evacuation area, who actually evacuated because of a reasonable belief that they were in imminent danger of death or serious injury from the explosions and fire if they remained.

Thus, this definition conflicts with the aforementioned class definition and raises the question of how exactly is the class defined. For this reason, we reverse and remand this matter to the trial court for clarification as to precisely how the class is defined.

■ We note that Appellees aver that the two different descriptions in the order describe the same class. We disagree. The original class definition, used by the trial court, in the conclusion of its order, includes an additional element, namely that class members evacuated "because of a reasonable belief that they were in imminent danger of death or serious injury," whereas the amended definition requires no reasonable belief or fear for those who evacuated. We simply cannot say that these two definitions describe the same class.

Alternatively, Appellees argue that the actual class, as defined by the trial court, is based on the amended definition contained in the class definition section of the court's order. Appellees specifically argue:

> The definition of the class adopted by the trial court in paragraph 8 of its order appears under the general heading of CLASS MEMBERSHIP, and the specific subheading of *Class Definition*. In the second sentence of paragraph 8 of its order, the trial court specifically found that "a class membership composed of these individuals is a class susceptible of precise definition by objective standards," citing *Van Buren, supra*. This is the class definition adopted by the trial court and is the one that should be upheld on appeal.

In support of their argument, Appellees cite to *Magness v. McEntire*, 305 Ark. 503, 808 S.W.2d 783 (1991), for the proposition that court orders are interpreted like any other instrument with the determinative factor being the intention of the court, as gathered by the order itself and the record.

■ Appellees' reliance on *Magness* is of no import in this case, however. Here, Appellees advanced two different class definitions, and the trial court ultimately included both of these definitions in its order. We simply have no way of ascertaining which definition is the intended class definition. Because we are reversing and remanding for clarification as to how the class is defined, we are unable to address the remaining points on appeal. *See, e.g., Southwestern Bell Yellow Pages v. Pipkin Enters., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004).

Reversed and remanded.