CHARTONE, INC. *v.* Roosevelt RAGLON

07-940 282 S.W.3d 760

Supreme Court of Arkansas
Opinion delivered April 24, 2008

Rose Law Firm, a Professional Association, by: Amy Lee Stewart and Byron J. Walker, for appellant.

Thrash Law Firm, by: Thomas P. Thrash; and Wood Law Office, P.A., by: Russell A. Wood, for appellee.

DONALD L. CORBIN, Justice. Appellant ChartOne, Inc., appeals the order of the Jefferson County Circuit Court granting Appellee Roosevelt Raglon's motion for class certification pursuant to Ark. R. Civ. P. 23. On appeal, ChartOne argues that the trial court erred in granting class certification because (1) the class definition presents no feasible means for identifying class members; (2) there is no statutory prohibition against ChartOne charging a fee for the service of mailing records; and (3) Raglon failed to sustain his burden of proof with regard to the requirements of predominance, superiority, and typicality. This court assumed jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2(d). We affirm.

## Facts

ChartOne is a health-information management company that provides copying services of medical records for doctors, hospitals, and other medical-care providers throughout Arkansas. Raglon, who had requested and paid for a copy of his medical records, filed his first amended complaint against ChartOne on February 5, 2007. The complaint alleged that ChartOne charged fees in excess of those allowed by statute for copying medical records and also charged for shipping and postage that it either did not incur or was reimbursed for by the medical-care provider. Raglon alleged that ChartOne's actions constituted a statewide deceptive practice in violation of Ark. Code Ann. § 16-46-106 (Repl. 1999),[1] the Arkansas Deceptive Trade Practices Act (ADTPA), codified at Ark. Code Ann. §§ 4-88-101 to -115 (Repl.

---

[1] Section 16-46-106 was amended pursuant to Act 662 of 2007. As the amendments to this section took effect after entry of the court's order granting the motion for class certification, we are concerned only with the prior version of the statute.

2001), and common law. Raglon sought to bring the action on his own behalf, as well as all those similarly situated, requesting that the court certify the matter as a class action, with Raglon as the named representative. Raglon requested declaratory and injunctive relief under the ADTPA and sought compensatory and punitive damages, as well.

ChartOne opposed Raglon's motion for class certification, arguing that the proposed class definition was ambiguous and contained no objective criteria by which to ascertain the members of the class. In addition, ChartOne argued that Raglon failed to sustain his burden of proving that the six required elements for certifying a class action under Rule 23 had been satisfied.

The circuit court held a hearing on the motion for class certification on April 5, 2007. At the hearing, Tonya Jones, a corporate representative for ChartOne, testified regarding ChartOne's billing practices in Arkansas. Specifically, Jones testified that it was unclear whether base charges or clerical charges were actually notary fees. Jones went on to state that ChartOne did not maintain any records to show whether a notary was requested or charged and that the company would have to pull every request ever received to determine if a notary service was requested. With regard to the data sheets maintained by ChartOne, Jones testified that they contained all the information that is on an invoice, including clerical fees, base fees, the date of the charges, who the invoice is sent to, the amount paid, the amount billed, and the number of pages copied. Jones also testified that within the last six years, ChartOne had billed its customers a percentage of the invoice for shipping and handling. Finally, she stated that some medical providers did reimburse ChartOne for postage.

At the conclusion of the hearing, the circuit court took the motion for class certification under advisement. In an order dated June 5, 2007, the circuit court granted Raglon's motion for class certification and defined the class as

> [a]ny person designated by ChartONE as (a) a "patient"; or (2) "attorney," including Plaintiff and all similarly situated persons, from the period of time beginning on January 1, 1994 to the present ("Class Period") who requested a copy of medical records from a healthcare provider located in Arkansas and who paid ChartONE (1) base fees, clerical fees, retrieval fees and/or page fees as part of a charge for copying medical records, which resulted in charges being in excess of $5 for the first five pages and 25¢ for each page thereafter; and/or (2) shipping charges.

Excluded from the class are the agents, affiliates and employees of the Defendant and the assigned judge and his/her staff, and members of the appellate court and their staff.

The circuit court concluded that the above-stated definition was sufficient to objectively identify members of the class. Additionally, the court concluded that the requirements of Rule 23 had been satisfied. From that order, comes the present appeal.

*Standard of Review*

At the outset, we note that certification of a lawsuit as a class action is governed by Rule 23. Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *See Teris, LLC v. Golliher*, 371 Ark. 369, 266 S.W.3d 730 (2007); *Asbury Auto. Group, Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *Teris*, 371 Ark. at 372, 266 S.W.3d at 732. This court does not delve into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *See Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004).

Rule 23 provides in relevant part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement

of an action brought as a class action, the court shall determine by order whether it is to be maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Under Rule 23, the following six requirements must be met before a lawsuit can be certified as a class action: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See Teris*, 371 Ark. 369, 266 S.W.3d 730. Having set forth our standard of review, we now turn to the points on appeal.

## I. Class Definition

For its first point on appeal, ChartOne argues that the trial court erred in granting the motion for class certification, because the class definition presents no feasible means for ascertaining the members of the class. Specifically, ChartOne argues that the class as defined suffers the fatal defect that the circuit court cannot determine in any reasonable or feasible manner which of ChartOne's customers are class members. In advancing this argument, ChartOne states that such a determination cannot be made because there is no way of ascertaining the per-page charges without reviewing the actual requests for records that are stored with the patients' medical files, mainly because it is unable to determine if a notary fee was charged or not. ChartOne further avers that it is simply not feasible to conduct a file-by-file review of confidential medical records that could number over 120,000 files. Raglon counters that class members can be identified by objective criteria, including ChartOne's own billing records. With regard to the notary-fee issue, Raglon avers that any issue that may arise regarding a notary fee is a damages issue and does not render the class definition defective. We agree with Raglon.

In addressing the issue of class definition, this court has recently said:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is

neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Teris*, 371 Ark. at 373, 266 S.W.3d at 733 (quoting *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 614, 232 S.W.3d 444, 448 (2006)). We further pointed out in *Teris* that clearly defining the class ensures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded. *See also Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001).

Thus, the issue before us is whether or not the class definition provides a feasible manner to determine class membership. In its brief to this court, ChartOne avers that the present case is distinguishable from that of *Lenders Title Co. v. Chandler*, 358 Ark. 66, 186 S.W.3d 695 (2004). There, Lenders challenged the sufficiency of the class definition set out by the trial court as being too broad and impermissibly requiring the trial court to inquire into the facts of each individual case in order to determine whether a person was a class member. Lenders also argued that there was no administratively feasible way of identifying the class members because it would require a manual review of more than 50,000 of its closing files. We rejected Lenders's argument and ultimately held in part:

> We are not persuaded by the argument that it is not administratively feasible for Lenders to have to manually review each of the more than 50,000 closing files to identify the class members. Instead, we agree with Chandler that Lenders should not be allowed to defeat class certification by relying on its inadequate filing and record system. The fact that Lenders cannot discover such information by the push of a button on a computer does not render the class identification any less administratively feasible. Administratively feasible does not mean convenient. Were Lenders to succeed on this point, it would undoubtedly encourage other businesses to keep bad records for the purpose of avoiding class actions. We thus affirm on this point.

*Id.* at 75-76, 186 S.W.3d at 700-01.

 ChartOne avers that, unlike the situation in *Lenders*, it was wholly appropriate for it to keep the medical-records requests with the patients' files and that such a practice was a sound business judgment. Missing from this argument is an explanation of how the failure to maintain any record keeping beyond the data sheets is a sound business practice. We are thus unpersuaded by ChartOne's argument in this regard for two reasons. First, the data sheets produced by ChartOne are, at the least, a beginning method for identifying potential class members. Those sheets include a customer identification number, information regarding whether that customer was charged a base fee, clerical fee, or per-page fee, as well as the amounts charged for such fees. Additionally, the data sheets reflect whether a customer was charged a postage or shipping fee. According to Ms. Jones, the ChartOne corporate representative, those data sheets allow the company to tell which invoices were paid and how much was paid.

We are cognizant that ChartOne attempts to circumvent this fact by arguing that it has no way of determining from the data sheets if a notary fee was charged and, thus, it cannot ascertain damages from the data sheets. Specifically, Ms. Jones testified as follows:

> Q. Okay. And if the Court determines that ChartOne can charge only the page fee of one dollar for the first five pages and twenty-five cents for each page thereafter, you can determine that total amount of overcharge that was charged to all class members, all patients and all attorneys, from the data sheets that are Exhibit 2, can you not?
>
> A. No, I can't determine if there was a notary fee in those data sheets.
>
> Q. Okay.
>
> A. So I can't determine that.
>
> Q. All right. If he says you can't charge for a notary fee because it's not in there, and it's nowhere documented and nobody knows anything about it but you, can you charge — can you calculate the total damages based on the data sheets?
>
> A. Yes.

Q. Okay. And you can also determine the overcharge for each individual invoice based on the data sheets.

A. If— if there is — if a notary fee is not allowed, and there's only a per page fee, yes.

However, any deficiency in those data sheets involve information that would be needed in the damages stage of the present proceedings. As we have consistently recognized, damages is a separate issue. *Farmers Ins. Co., Inc. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006).

Second, ChartOne's argument that they have no way of identifying class members without going back and searching hundreds of thousands of private medical records is insufficient to defeat the class definition. Despite ChartOne's attempt to distinguish this case from *Lenders*, we believe that the rationale underlying our decision in that case is wholly applicable in the present case. Much of Ms. Jones's testimony at the class-certification hearing, as well as her deposition testimony, focused on the fact that ChartOne has inconsistent billing and record-keeping practices. Ms. Jones tried to explain the inconsistencies by stating that ChartOne had upgraded its billing system several times, resulting in differing practices, and that regulations regarding billing vary from state to state. Whatever the reason, the fact that ChartOne failed to maintain and store sufficient records is not the fault of Raglon or the class. We simply do not see how it was an "appropriate business practice" to maintain the only detailed invoice with the patients' medical records. Moreover, ChartOne's assertion that being forced to review medical records is not administratively feasible is unavailing. As we recognized in *Lenders*, administratively feasible does not equate to convenient. Just as we stated in *Lenders*, if we were to allow ChartOne to defeat the class definition because of its own failure to maintain accurate records, including whether a notary fee was charged or not, we would encourage other businesses to maintain poor records in an attempt to avoid class actions. Thus, we reject ChartOne's argument regarding the class definition.

## II. Interpretation of Section 16-46-106

Next, ChartOne argues that the circuit court erred in certifying this as a class action because its order certifying the class was based, in part, on the court's erroneous interpretation of section 16-46-106. Specifically, ChartOne alleges that the trial

court read into the statute a prohibition that is simply not there; namely, that ChartOne is prohibited from charging a fee for postage. According to ChartOne, the statute governs only the charges allowed for copying medical records and does not regulate postage, notary services, or other ancillary services. Moreover, ChartOne argues that because this issue is one of statutory interpretation that directly impacts the court's decision to certify the class, we should review this issue de novo. Raglon counters that the trial court properly found that section 16-46-106 does not authorize a charge for shipping and postage but, in any event, the issue of whether the statute allows such a charge or not is not a basis for the class definition. Moreover, Raglon points out that in his first amended complaint, he alleges that the charging of fictitious and excessive postage is a deceptive act in violation of the ADTPA and common law, thus, ChartOne's argument is irrelevant. We agree.

ChartOne's argument on this point is unavailing, as it has mischaracterized the nature of the circuit court's order. In its order, the court, under the heading "Findings of Fact," stated as follows:

> Without making a determination of credibility and without considering the merits of the claims, *the following is the type of common proof that might be presented*, which supports the procedural decision to certify this case as a class action[.]

(Emphasis added.) The order then sets forth examples of such common proof, including: "Arkansas law does not authorize a charge for shipping or postage as part of the allowed charges for copying medical records." Although ChartOne argues that in order to sustain the class as defined, this court must approve of the circuit court's interpretation of section 16-46-106, we do not agree. The portion of the class definition concerning the charging of postage or shipping is not limited to section 16-46-106. As Raglon points out, he alleges that ChartOne violated the ADTPA and common law by charging fictitious postage or shipping charges. Simply put, the class is not as narrowly defined as ChartOne's argument suggests.

Moreover, the issue of whether ChartOne charged excessive or fictitious postage or shipping charges goes to the underlying merits of this case. As recognized by ChartOne, it is improper for this court to consider the merits of the underlying lawsuit in reviewing the appropriateness of a class-certification

order. *See Mittry v. Bancorpsouth Bank*, 360 Ark. 249, 200 S.W.3d 869 (2005). We are not persuaded by ChartOne's reliance on *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), for the proposition that we may delve into the merits in order to analyze the factors under Rule 23. In sum, the issue of whether section 16-46-106 allows ChartOne to charge for postage or shipping is immaterial to our review of the requirements of Rule 23. Accordingly, this argument provides no basis for reversing the order granting class certification.

### III. Rule 23 Requirements

Next, ChartOne argues that the circuit court erred in certifying this as a class action because Raglon failed to sustain his burden of proof that all the elements of Rule 23 have been satisfied. Specifically, ChartOne claims that Raglon failed to establish the elements of predominance, superiority, and typicality. To the contrary, Raglon asserts that the circuit court properly found that all of the elements of Rule 23 had been satisfied.

### a. Predominance

In arguing that the predominance requirement has not been satisfied, ChartOne avers that this court is charged with the task of determining whether the circuit court's order identified issues for the elements of Raglon's claim that predominate over the inconsequential questions. Citing to this court's opinion in *Williamson v. Sanofi Winthrop Pharmaceuticals, Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001), ChartOne avers that if determinative questions cannot be answered en masse, the predominance requirement has not been met. ChartOne then argues that the circuit court deemed only one issue to predominate over the others: "Whether the prices charged by ChartONE exceed the amounts allowed by Ark. Code Ann. § 16-46-106[.]" This conclusion was in error, according to ChartOne, because in order to determine that predominating question, the fact-finder would have to engage in individualized inquiries that are specific to each class member. Raglon counters that his claim, as well as the claims of any class members, all arise from ChartOne's uniform practice of charging Arkansas consumers inflated prices for copying medical records and for fictitious and excessive postage expenses; thus, according to Raglon, this common practice gives rise to predominating issues, both of fact and law. Moreover, Raglon asserts that simply because individual issues may exist, the element of predominance is not defeated.

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" In *Georgia-Pacific Corp. v. Carter*, 371 Ark. 295, 265 S.W.3d 107 (2007), this court noted that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *See Johnson's Sales Co., Inc. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007). We have recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *See id.* In addition, we have said that

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Carter*, 371 Ark. 295, 301, 265 S.W.3d 107, 111 (quoting *Asbury*, 366 Ark. at 610, 237 S.W.3d at 469). If, however, the preliminary issues are individualized, then the predominance requirement is not satisfied. *Johnson Sales*, 370 Ark. 387, 260 S.W.3d 273.

We must thus determine whether there is a predominating question that can be answered before determining any individual issues regarding damages. In addressing the issue of predominance, the circuit court found that the issue of whether the prices charged by ChartOne exceeded those allowed under section 16-46-106 was the single most common issue that predominated over all others. This finding was not an abuse of discretion. ChartOne's billing practices, whether they be for the copying of records or for shipping or postage, are the central issue of this litigation. Raglon alleges that ChartOne engaged in a deceptive scheme to overcharge its customers in violation of statutory and common law; thus, the issue of whether ChartOne overcharged its customers is a predominating question. We simi-

larly held that the issue of whether a defendant engaged in a fraudulent scheme predominated over any individual issues in *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997). Accordingly, ChartOne's argument that the element of predominance is not satisfied is without merit.

### b. Superiority

ChartOne argues that the circuit court erred in determining that the element of superiority had been satisfied because individual issues create insurmountable manageability problems. According to ChartOne, it will be necessary for the fact-finder to make customer-specific determinations about what services were requested and subsequently provided. ChartOne also argues that there are more expeditious avenues for pursuing this action. Raglon argues that the trial court correctly determined that a class action was the superior method of proceeding, particularly because of the large number of persons affected and the relatively small amount of potential claims.

Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This court has repeatedly held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *See Beverly Enters.–Ark., Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007); *Van Buren*, 365 Ark. 610, 232 S.W.3d 444. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Van Buren*, 365 Ark. 610, 232 S.W.3d 444. This court has further stated that when a circuit court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *Id.* Furthermore, the avoidance of multiple suits lies at the heart of any class action. *Beverly*, 370 Ark. 310, 259 S.W.3d 445.

In addressing the requirement of superiority, the circuit court concluded that resolution of the central issues in this case was superior to the adjudication of those common issues in individualized proceedings that could number in the thousands. Moreover, the court took into consideration the fact that because of the size of the potential claims, they might otherwise go unaddressed. The trial court thus reasoned that the efficiency of resolving the

predominating central issues established the superiority of resolving this matter as a class action. We agree.

■ As we explained, the common, predominating issue is whether ChartOne engaged in a scheme to overcharge customers for copying charges, as well as postage and shipping. This common question can be answered and, if necessary, subsequent trials can be held on any individual issues. ChartOne's assertion that the court would have to conduct an individualized inquiry into what services were requested and provided does not defeat the finding of superiority, as any such inquiry would go to damages and could be handled in a bifurcated proceeding. Moreover, simply because the number of potential class members may number in the thousands does not render this matter unmanageable as a class action. To the contrary, the large number of potential class members, and the relatively small size of their claims, favors a finding of superiority. Finally, proceeding as a class action is fair to both sides. Each side can present evidence regarding the predominating question of whether ChartOne engaged in a deceptive scheme. Accordingly, the trial court did not err in concluding that a class action was the superior method for handling this case.

### c. Typicality

Finally, ChartOne argues that Raglon failed to demonstrate that the element of typicality had been satisfied. Specifically, ChartOne argues that Raglon's claims are not typical of the proposed class, as any claim against ChartOne stemming from its charges will vary from person to person. Raglon asserts that his claims are typical of those of the class, as he and all class members were charged inflated prices for copying medical records and for fictitious postage expenses.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This court has described the typicality requirement as follows: "[T]he typicality requirement is satisfied where the event or practice or course of conduct that gives rise to the claim of other class members is the same event or practice or course of conduct that gives rise to the plaintiffs injury, and where the claim is based upon the same legal theory." *Asbury*, 366 Ark. at 609, 237 S.W.3d at 468 (quoting *Van Buren*, 365 Ark. at 619, 232 S.W.3d at 451). We also stated that "[t]he class representative's claim must only be typical and not identical." *Id.* (quoting *Van Buren*, 365 Ark. at 619, 232 S.W.2d at 452).

In determining that typicality had been met, the circuit court concluded that Raglon's claims were typical of all patients or their attorneys who requested copies of medical records from a medical-care provider. The court pointed out that Raglon and the class allege the same unlawful conduct by ChartOne and a resolution of the central issues of whether ChartOne overcharged its customers will resolve all class members' claims; thus, making the claims typical. A similar result was reached by the circuit court and affirmed by this court in *Asbury*, 366 Ark. 601, 237 S.W.3d 462. There, this court held that the element of typicality was satisfied where the claims of the class members all arose out of the same conduct; namely, the charge of a documentary fee by the car dealers. Likewise, here the claims of the class members all arose out of ChartOne's practices of charging for the copying of medical records. Accordingly, the trial court did not abuse its discretion in concluding that the element of typicality was satisfied.

Affirmed.