Cite as 2024 Ark. 145

# SUPREME COURT OF ARKANSAS

**No.** CV-24-52

| | |
|---|---|
| | **Opinion Delivered:** October 3, 2024 |
| PROGRESSIVE NORTHWESTERN INSURANCE COMPANY<br><div align="right">APPELLANT</div> | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-22-74] |
| V. | |
| MISTY HUDDLESTON AND LANE HUDDLESTON, INDIVIDUALLY AND ON BEHALF OF ALL ARKANSANS SIMILARLY SITUATED<br><div align="right">APPELLEES</div> | HONORABLE JACK "JAY" T. PATTERSON II, JUDGE<br><br><u>AFFIRMED.</u> |

**SHAWN A. WOMACK, Associate Justice**

Appellant Progressive Northwestern Insurance Company appeals a Pope County Circuit Court order certifying a class to pursue claims against Progressive for a uniform adjustment practice that allegedly violates Arkansas insurance law and is applied to all of Progressive's insureds who responsibly maintain health-care insurance with separate providers. For reversal, Progressive argues: (1) the claims alleged by the Plaintiff (Huddleston) are not common of that of the class; (2) they do not predominate over individual issues; (3) Huddleston is not typical of the class; and (4) a class action is not a superior method to handle hundreds, if not thousands, of these cases. We affirm.

I.  *Facts and Procedural Background*

This is an appeal from a class-certification order against Progressive Northwestern Insurance Company. Huddleston challenges Progressive's alleged uniform adjustment of medical expense insurance coverage (Med-Pay) in violation of Arkansas insurance law. The class, consisting of Progressive's insureds who maintain health-care insurance with separate providers, contends that Progressive's adjustment practice improperly reduces Med-Pay benefits on the basis of payments from secondary health-care insurance.

Med-Pay, governed by Ark. Code Ann. § 23-89-202 (Repl. 2014), provides primary coverage for medical expenses following an automobile accident and must pay without consideration of other insurance. *See* Ark. Ins. Comm'n R. 21 § 6; Ark. Ins. Comm'n Bulletin No. 4-74 (Apr. 5, 1974).[1] Despite these legal requirements, Progressive employs an adjustment method using "Code 563" on explanations of benefits. This practice adjusts Med-Pay benefits to reflect amounts paid, anticipated to be paid, or capable of being paid by the insured's health-care provider, regardless of the medical provider's actual billing. This adjustment is documented in Progressive's "Guidelines for Health Insurance Payments—State Specific," which directs that Med-Pay reimbursements match the amounts paid by the insured's health-care insurance. This results in a reduction of payments in alignment with the secondary insurance's coverage, rather than the billed amount.

The named plaintiff, Misty Huddleston, filed this action on behalf of her minor son and similarly situated insureds after their Med-Pay claim was adjusted using Code 563 following an automobile accident. Huddleston argues that Progressive's adjustment practice

---

[1] https://insurance.arkansas.gov/site/assets/files/1914/4-74.pdf, archived at https://perma.cc/AF38-3U3Q.

violates Arkansas law by considering secondary health-care insurance when calculating primary Med-Pay coverage. Given the uniform application of the practice, she sought class certification, a declaration that the practice is unlawful, and damages for breach of contract, asserting that Progressive's policy promised Med-Pay benefits unadjusted for secondary insurance payments.

Following discovery, Huddleston moved for class certification, which the circuit court granted. The class includes all Arkansas residents who had Med-Pay claims adjusted by Progressive using Code 563 and received less than the policy limit for their claims between February 16, 2017, and September 28, 2023. Progressive appeals the certification of this class.

## II. *Standard of Review*

The certification of a class action is governed by Arkansas Rule of Civil Procedure 23. Rule 23 imposes six prerequisites for certification of a class-action complaint: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. Ark. R. Civ. P. 23(a), (b).[2] Circuit courts have broad discretion regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion.[3]

When reviewing a class-certification order, we focus on the evidence contained in the record to determine whether it supports the circuit court's conclusion regarding

---

[2]*Philip Morris Cos. Inc. v. Miner*, 2015 Ark. 73, 462 S.W.3d 313.

[3]*See Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008).

3

certification.[4] Our focus is "whether the requirements of Rule 23 are met," and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action."[5] Stated another way, neither this court nor the circuit court may "delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met."[6] This is because, under Arkansas law, class certification is purely "a procedural question."[7] With these standards in mind, we now turn to the merits of this appeal.

### III. *Discussion*

On appeal, Progressive challenges the circuit court's findings on four of the six prerequisites for a class action. First, Progressive argues that there are no common questions because the use of the 563 Code varies depending on the specific payment scenario and because of differences in individual damages. Next, rehashing the same commonality arguments, Progressive claims that common questions do not predominate over individual issues. Third, Progressive argues that the Plaintiff's claims are not typical of those of the class. And fourth, Progressive argues that a class action is not a superior method to adjudicate Huddleston's claims.

### A. Commonality

---

[4]*Asbury Auto. Grp., Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006).

[5]*Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004).

[6]*Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005).

[7]*Carquest of Hot Springs, Inc.* v. *Gen. Parts, Inc.*, 367 Ark. 218, 223, 238 S.W.3d 916 919–20 (2006).

One of the prerequisites for bringing a class-action complaint is that "there are questions of law or fact common to the class."[8] This is the commonality requirement. This requirement is met if even a single issue is common to all class members.[9] A uniform practice alleged to affect all class members in the same way can satisfy commonality, as it gives rise to a shared cause of action.[10] The circuit court must identify the common issues in a cause of action when certifying a class.[11]

Below, the circuit court identified three common issues: (1) whether the 563 Code adjustment practice is unlawful under Arkansas insurance law; (2) whether this adjustment practice constitutes a breach of the Med-Pay insurance contract; and (3) whether class members are entitled to damages or other relief. The Plaintiff claims these questions arise from the uniform application of the 563 Code adjustment practice, which reduces Med-Pay benefits on the basis of secondary health insurance payments, regardless of the provider's actual billing. And since all class members are affected by this practice in the same way, the core question—whether the 563 Code adjustment practice is lawful—remains common to all. We agree with Huddleston and, accordingly, affirm the circuit court's finding on commonality.

---

[8]Ark. R. Civ. P. 23(a)(2).

[9]*City of Conway v. Shumate*, 2017 Ark. 36, at 4, 511 S.W.3d 319, 323–24.

[10]*Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 254 (W.D. Ark. 2011).

[11]*Philip Morris*, 2015 Ark. 73, at 4, 462 S.W.3d at 316 (quoting Newberg, *Class Actions* § 3.10 (3d ed. 1993)).

Here, Progressive's practice of adjusting Med–Pay claims based on health insurance payments is uniform and affects all class members equally. Yet Progressive argues that the use of the 563 Code varies depending on the specific payment scenario, suggesting that this undermines commonality. Progressive's argument is misplaced. The variation in who is paid—whether it be the medical provider, the insured, or the health-care insurer—is irrelevant to the common issue at hand. The key question is how Progressive calculates Med–Pay benefits based on health-care insurance payments, a practice the class alleges is unlawful. This question is central to the case and applies uniformly to all class members, thereby establishing commonality. Likewise, Progressive's assertion that differences in individual damages defeat commonality is unconvincing. As in *Municipal Health Benefit Fund v. Hendrix*, 2020 Ark. 235, 602 S.W.3d 101, differing damages amounts do not negate common legal and factual issues. The focus here is on the legality of the 563 Code adjustment practice, and if it is found unlawful, the determination of damages can follow from Progressive's own records. Therefore, we affirm the circuit court's findings on commonality.

## B. Predominance

The next issue involves predominance. Predominance is a shorthand term for the following Rule 23(b) requirement: "An action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The starting point in examining the predominance requirement is whether a common wrong has been alleged

against the defendant.[12]  This element can be satisfied if the preliminary, common issues may be resolved before any individual issues.[13]

In making this determination, we do not merely compare the number of individual versus common claims.[14]  Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings if necessary.[15]  Conducting a trial on the common issue in a representative fashion can achieve judicial efficiency.[16]  Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members.[17]

In this case, the crux of the matter is whether Progressive's practice of calculating Med-Pay benefits by coordinating those benefits with its insureds' secondary health-care insurance is lawful under Arkansas law.  This singular issue dominates the case and applies uniformly to all class members, making it ripe for class-wide adjudication.  Indeed, this question dominates the case because it applies to all class members who were affected by the

---

[12]*Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, 426 S.W.3d 455.

[13]*Asbury Auto.*, 366 Ark. at 610, 237 S.W.3d at 469.

[14]*Philip Morris, supra.*

[15]*Id.*

[16]*Id.*

[17]*Id.*

7

same uniform adjusting practice. As in *Robertson*, where individual negotiations and professional discretion were argued to introduce individual issues, Progressive similarly suggests that individualized issues exist, particularly the issue of damages.[18] However, the existence of such issues does not defeat predominance. *Shumate*, 2017 Ark. 36, at 8, 511 S.W.3d at 325, clarifies that the possibility of individual defenses or damages inquiries does not negate class certification when there are overriding common questions concerning the defendant's alleged wrongdoing.

The circuit court correctly recognized this when it found that if the 563 Code adjusting practice is found to be unlawful, that determination would apply across the entire class, just as a judgment in favor of Progressive would preclude future challenges. This consistent application of the adjusting practice, coupled with the common question of its legality, demonstrates that predominance is satisfied in this case. Therefore, we affirm the circuit court's finding that the common issues predominate over any individual questions.

C. Typicality

Progressive also challenges the typicality of Huddleston's claims, asserting that her experience is not representative of the entire class. However, the typicality requirement, as set forth in Ark. R. Civ. P. 23(a)(3), is met when the class representative's claims arise from the same course of conduct that gives rise to the claims of other class members.[19] The focus of the typicality analysis is on the defendant's conduct, not the specific injuries or damages

---

[18] *Farmers Union Mut. Ins. Co., Inc. v. Robertson*, 2010 Ark. 241, 370 S.W.3d 179.

[19] *See DIRECTV, Inc. v. Murray*, 2012 Ark. 366, 423 S.W.3d 555.

8

suffered by individual plaintiffs.[20] Thus, varying fact patterns or degrees of injury among class members do not defeat typicality so long as the underlying legal theory and the alleged conduct are the same for all plaintiffs.[21]

Here, the core issue is whether Progressive's 563 Code adjustment practice violates Arkansas insurance law. This practice allegedly impacted all class members uniformly by coordinating Med-Pay benefits based on the insureds' secondary health insurance. Huddleston's claim, like those of the other class members, arises directly from this practice. Whether this adjustment practice is lawful is the key question that applies equally to all class members. Thus, Huddleston's claims are not merely typical—they are identical to those of the class. As the circuit court correctly observed, "the factual and legal basis of Defendant's alleged liability are common to all members of the Class and represent a common cause of action to Plaintiff and the Class members."

Once more, Progressive attempts to challenge typicality by pointing to potential differences in injuries or damages among class members, focusing on who was paid and when. However, as this court has previously noted, arguments regarding individual damages do not affect the determination of typicality, which pertains to the defendant's conduct— not the specifics of each plaintiff's injury.[22] Progressive's argument fails to acknowledge that the 563 Code adjusting practice was applied across the board to all class members, including

---

[20]*Diamante, LLC v. Dye*, 2013 Ark. 501, 430 S.W.3d 710.

[21]*Cach, LLC v. Echols*, 2015 Ark. 446, 506 S.W.3d 217.

[22]*Carquest*, 367 Ark. 219, 238 S.W.3d 916.

9

Huddleston's son. This practice, if unlawful, would have uniformly reduced Med-Pay claim payments, constituting a breach of contract under Arkansas insurance law.

In short, the circuit court's determination that Huddleston's claims are typical of the class is well-founded. We therefore affirm the circuit court's finding that Huddleston is a typical class representative.

## D. Superiority

Last, Progressive contends that a class action is not the superior method to adjudicate Huddleston's claims. Under Ark. R. Civ. P. 23(b), a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy."[23] The superiority requirement is satisfied when class certification is the more efficient method of handling the case, and it is fair to both sides.[24] In determining superiority, courts consider whether common, predominating questions of law or fact exist that can be decided on a class-wide basis, as well as the manageability of the class and the need to avoid multiple suits.[25]

Here, the circuit court properly found that a class action is the superior method for handling the claims against Progressive. The court specifically noted that, "given the predominance of the common issues," a class action is "unquestionably superior to litigating hundreds of individual lawsuits." Each suit would require an analysis of the same 563 Code

---

[23]*Asbury*, 366 Ark. 607, 237 S.W.3d 463.

[24]*ChartOne, Inc. v. Raglon*, 373 Ark. 281, 283 S.W.3d 576 (2008).

[25]*Id.*

adjustment practice, which would result in repetitive litigation of the same legal issues. This duplication of effort would not only waste the resources of both the court and the parties but would also risk inconsistent adjudications. The legality of Progressive's uniform adjustment practice is at the heart of this case, making it particularly well-suited for class adjudication.[26]

Progressive argues that individual claims should be litigated separately, but this argument overlooks the fact that each class member is seeking to enforce the same Arkansas law against the same adjustment practice. As the circuit court correctly concluded, there are no individual issues that would strain manageability. The application of Arkansas law is uniform across all claims, and the case does not involve complex variations in the law of multiple jurisdictions. Progressive's brief offers only a cursory challenge to the circuit court's superiority finding, failing to address the core issue: whether its 563 Code adjusting practice violates Arkansas insurance law. As the circuit court noted, the legality or illegality of this practice applies uniformly to all class members. If it is unlawful, the class prevails; if not, Progressive prevails. There is no more efficient or fair method to adjudicate these claims than through a class action, and Progressive's arguments to the contrary miss the central issue in the case. Accordingly, we affirm the circuit court's finding that class treatment is the superior method for handling this case.

For the foregoing reasons, we affirm the circuit court's class-certification order.

Affirmed.

---

[26]*Id.* at 373 Ark. at 287, 283 S.W.3d at 585.

*Eversheds Sutherland (US) LLP*, by: *Kymberly Kochis* and *Tracey K. Ledbetter* (admitted *pro hac vice*); *Anderson, Murphy & Hopkins, L.L.P.*, by: *Debbie S. Denton* and *Mark D. Wankum*, for appellant.

*Streett Law Firm, P.A.*, by: *James A. Streett*; *Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC*, by: *Joe P. Leniski*; *Brian G. Brooks*, for appellees.