2011 Ark. 210

**BAPTIST HEALTH, Appellant,**

**v.**

**Andre HUTSON et al., Appellee.**

No. 10–1150.

Supreme Court of Arkansas.

May 12, 2011.

Friday, Eldredge & Clark, LLP, Little Rock, by: Robert S. Shafer and William A. Waddell, Jr., for appellant.

Ludwig Law Firm PLC, by: Gene A. Ludwig; and Catlett Law Firm, PLC, Little Rock, by: S. Graham Catlett, Christian C. Michaels, Paul G. Charton, and H. Bradley Walker, for appellee.

KAREN R. BAKER, Justice.

Appellant Baptist Health ("Baptist") appeals from the Pulaski County Circuit Court's order granting appellee Andre Hutson's class-certification motion. This is the second interlocutory appeal. In the first appeal, we reversed the certification because the circuit court's conclusion—that the requirements of commonality concerning issues of fact and law, predominance, and superiority were satisfied—was an insufficient analysis of class-action factors. *See Baptist Health v. Haynes*, 367 Ark. 382, 240 S.W.3d 576 (2006) (*Baptist I*).[1] This court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(a)(7) (2010) because this is a subsequent appeal following an appeal previously decided by this court. Baptist argues on appeal that the circuit court abused its discretion by approving a class definition that impermissibly requires delving into the merits to identify the class members and by finding that Rule 23's requirements of predominance and superiority had been satisfied. We affirm.

After remand in *Baptist I*, the complaint was voluntarily dismissed pursuant to Ark. R. Civ. P. 41(a). Upon refiling the class-action complaint, Hutson asserted that she underwent outpatient medical tests at Baptist on March 8, 2004, for which she had contracted to pay Baptist's "regular rates and terms." She alleged that she was billed an excessive amount, but she ultimately paid the charges. Baptist assessed her charges for five identified medical services ("IMS") at rates found in the hospital's master-charge catalog. She was billed pursuant to neither a governmental

medical plan or program, nor a separate contract between Baptist and an insurance provider. Hutson argued that Baptist breached its contractual obligation to assess charges at no more than its regular rates and terms by assessing charges of class members at the master-charge-catalog rate and that a class action was the only feasible method to address the controversy as Baptist had breached its contractual obligation to more than one thousand patients for the IMS.

Baptist admitted that it provided medical services or goods to many patients who were not covered by a government plan or an insurance contract wherein prices for medical services had been negotiated. Baptist also admitted that it charges its patients for services or goods according to prices listed in its charge catalog or charge master. Baptist denied that it charged any of its patients an amount in excess of its regular rates and terms. Finally, Baptist asserted that the amount it accepts in satisfaction of a patient's obligation to pay is subject to numerous factors, including negotiation of prices before or after the rendition of services, discounts, and charity care.

The circuit court conducted a hearing on the motion for class certification on July 6, 2010. By order dated July 26, 2010, the circuit court certified the class to include patients who were charged for one or more of the five IMS at the master-charge rates, who did not receive a discount from the master-charge-catalog rates under a government health program or a private insurance contract, and who either paid the charges or remain legally liable for payment. Baptist timely brings this appeal from the July 26, 2010 order.

## I. *Standard of Review*

Class actions are governed by Rule 23 of the Arkansas Rules of Civil Proce-

1. Hutson was one of the three plaintiffs in *Baptist I*.

dure, which provides that one or more members of a class may sue in a representative capacity only if the class is so numerous that joinder of all members is impracticable and there are questions of law or fact common to the class. Ark. R. Civ. P. 23(a). The claims or defenses of the representative parties must be typical of the claims or defenses of the class, and the representative parties and their counsel must fairly and adequately protect the interests of the class. *Id.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Ark. R. Civ. P. 23(b). This court has held that the six requirements for class-action certification are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See Gen. Motors Corp. v. Bryant,* 374 Ark. 38, 285 S.W.3d 634 (2008).

The determination that the class-certification criteria have been satisfied is a matter within the broad discretion of the trial court, and this court will not reverse the trial court's decision absent an abuse of that discretion. *ChartOne, Inc. v. Raglon,* 373 Ark. 275, 283 S.W.3d 576 (2008). In reviewing a class-certification order, this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification. *Id.* Neither the trial court nor this court shall delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Id.* In this regard, "'a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have

a cause of action.'" *Bryant,* 374 Ark. at 42, 285 S.W.3d at 638 (quoting *Carquest of Hot Springs, Inc. v. Gen. Parts, Inc.,* 367 Ark. 218, 223, 238 S.W.3d 916, 920 (2006)). We view the propriety of a class action as a procedural question. *See id.*

## II.  *Class Definition*

The circuit court defined the class as "[a]ll persons, from January 17, 2003, through the date of certification, who signed admissions forms with [Baptist] and were assessed, and either paid or remain legally liable for, charges for payment on the patient's account for an [IMS] at the master charge catalog rate." Baptist argues that the circuit court erred in defining the class to include persons who remain legally liable on their patient accounts as that definition requires the court to delve into the merits of the individual claims. Hutson responds that the circuit court will be able to determine class membership without resolving the ultimate issue in the case because all of the information can be found in the hospital records of the prospective class members.

We acknowledge at the outset that defining the class is not a specified prerequisite to class certification under Rule 23. In order for a class action to be certified, a class must exist. *Ferguson v. Kroger Co.,* 343 Ark. 627, 632, 37 S.W.3d 590, 593 (2001) (quoting 5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed.1997)). The class must first be susceptible to precise definition to ensure that the class is neither "amorphous," nor "imprecise." *Id.* Concurrently, the class representatives must be members of that class. *Id.* Before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the pro-

posed class. *Id.* Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria. *Id.* Clearly defining the class ensures that those people who are actually harmed by a defendant's wrongful conduct will participate in the relief ultimately awarded. *Ferguson,* supra.

We find persuasive the underlying class-definition rationale in *Farmers Insurance Co. v. Snowden,* 366 Ark. 138, 233 S.W.3d 664 (2006). There, insureds sued an automobile insurer to recover for the diminution in value of their repaired vehicles. Farmers asserted that the identity of the class members could not be determined absent impermissibly inquiring into the facts of each individual case. Disagreeing, we noted "that in order to determine if an individual fits into the class, the court only has to ensure that the claimant had a specific coverage with Farmers, made a certain type of damage claim to their insured vehicle, received payment within a certain time frame, and did not receive payment for diminished value." *Id.* at 147–48, 233 S.W.3d at 670. We acknowledged that to determine diminution in value required analyzing fifteen factors, many of which were not in the claim files of the insureds. *Id.* at 150, 233 S.W.3d at 672.

Here, the circuit court found that the class description was definite and administratively feasible for determining whether a particular person was a member. The court stated that identifying a potential class member required determining the date of admission, receipt of one or more IMS, assessment of charges at the master-charge rate, and payment or legal liability for the charges. Identification of a class member may require determining whether the person is legally responsible for the charges for services or goods received from Baptist; however, that does not require delving into the individual merits of each claim. Legal responsibility for the charges is but one factor to consider, and based upon the evidence presented to the circuit court, Baptist's records contain much of the information needed to analyze this issue. We find no abuse of discretion in the circuit court's approval of the definition.

### III. *Predominance*

Baptist argues that Hutson's breach-of-contract claim does not satisfy Rule 23's requirement of predominance because Hutson argues that regular rates in the admission agreement do not refer to master-charge-catalog rates; rather, they refer to some combination of the discounted prices accepted under either government contracts or private contracts. Baptist asserts that to ascertain whether it charged more than its regular rates, the trier of fact must fix the regular rate for each of the five IMS during the class period and that many variables are involved in attempting to fix rates by drawing upon the prices accepted by Baptist to satisfy the accounts of nonclass members; therefore, fixing the appropriate rate for each class member is more individual than common and does not avoid a multiplicity of suits.

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Ark. R. Civ. P. 23(b). In *Johnson's Sales Co. v. Harris,* 370 Ark. 387, 260 S.W.3d 273 (2007), this court reiterated that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied, even if

the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *Id.* Moreover, this court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *Id.* If, however, the preliminary issues are individualized, then the predominance requirement is not satisfied. [8]*United Am. Ins. Co. v. Smith,* 2010 Ark. 468, 371 S.W.3d 685.

We have never addressed what constitutes a regular rate regarding hospital charges; however, our analysis in *Campbell v. Asbury Automotive, Inc.,* 2011 Ark. 157, 381 S.W.3d 21, is helpful in determining the issue of predominance.[2] In *Campbell,* the plaintiffs alleged that Asbury charged an illegal document-preparation fee for preparing installment contracts for the purchase of a vehicle. We held that the predominating questions were whether Asbury's dealerships engaged in a practice whereby buyers were approved at one rate of interest, but given another, higher rate of interest, for which the dealerships received an incentive, and whether those facts were concealed from the buyers. We concluded that the individual issues, such as the various lending entities and their respective incentive agreements, did not defeat the common questions.

Here, the circuit court found that the common questions of law and fact predominated over any individual questions. The court said that the focal point of Hutson's case was the master-charge rate assessed

a potential class member for each of the IMS in Baptist's form contract. The common issue is a threshold one and will result in either a [9]dismissal or a basis for determining damages. The court concluded that the case can efficiently resolve the interpretation of the regular rate for each of the IMS. Like in *Campbell,* the individual issues here, applying the various factors to determine the prices accepted by Baptist to satisfy the patient accounts of non-class members, do not defeat the common question. We find no abuse of discretion in the circuit court's finding that the requirement of predominance is satisfied.

## IV. *Superiority*

■ Baptist argues that certifying this class will not avoid a multiplicity of lawsuits because Hutson challenges only five of the possible 88,000 items for which there are charges listed in the master-charge catalog; therefore, 87,995 items will not be resolved by the present case. Hutson responds that because this will be the first case in the state to interpret what regular rate means, such determination impacts not only the five IMS in this case, but all 88,000 items in the master-charge catalog as well.

■ Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Ark. R. Civ. P. 23(b). The superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *Johnson's Sales Co. v.*

---

**2.** Baptist cites us to several cases from other jurisdictions: *Eufaula Hosp. Corp. v. Lawrence,* 32 So.3d 30 (Ala.2009); *Maldonado v. Ochsner Clinic Found.,* 493 F.3d 521 (5th Cir.2007); *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671 (S.D.Fla.2007); and *Ahmad v. Yale–New Haven Hosp., Inc.,* 104 Conn.App. 380, 933 A.2d 1208 (2007). Decisions from other states and federal circuit courts are not binding on this court. *Asbury Auto. Grp., Inc. v. Palasack,* 366 Ark. 601, 237 S.W.3d 462 (2006) (another state's decision is not binding authority on this court); *Danner v. MBNA Am. Bank, N.A.,* 369 Ark. 435, 255 S.W.3d 863 (2007) (a federal circuit court's decision is not binding authority on this court).

*Harris,* 370 Ark. 387, 260 S.W.3d 273 (2007). Where a cohesive and manageable class exists, real efficiency occurs when common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues. *Id.* When a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class. *Gen. Motors Corp. v. Bryant,* 374 Ark. 38, 285 S.W.3d 634 (2008). Furthermore, the avoidance of multiple suits lies at the heart of any class action. *Id.*

We addressed the impact of excluded persons or claims on class certification in *Teris, LLC v. Chandler,* 375 Ark. 70, 289 S.W.3d 63 (2008), which involved evacuees from an area affected by explosions and fires at a hazardous-waste facility. There, we said that certification was not defeated simply because the defined class did not include some of the persons who were injured by the defendant's conduct. We noted that those persons could pursue their own claims or be part of another class action.

Here, the circuit court found that a class action was the superior method for proceeding because the only alternative method to adjudicate the claims of the class would be through numerous separate trials, with the potential for different and inconsistent results. The circuit court stated that in this situation, certifying the class would provide a substantial benefit from the standpoint of efficiency and judicial economy. Additionally, the circuit court found that the claims typical of the class are generally too small to pursue individually, so that if they cannot sue as a class, it is likely that the claims will never be heard. That only five IMS are included in this class and that there may be numerous other persons or claims remaining was considered by the circuit court and rejected as a basis to defeat superiority. We have noted that the question of superiority is very much related to the broad discretion conferred on a circuit court. *First-Plus Home Loan Owner 1997-1 v. Bryant,* 372 Ark. 466, 277 S.W.3d 576 (2008). We find no abuse of discretion in the circuit court's determination that the requirement of superiority is satisfied.

Affirmed.