
SLIP OPINION

Cite as 2013 Ark. 501

# SUPREME COURT OF ARKANSAS

No. CV-13-467

| | |
|---|---|
| DIAMANTE, LLC | **Opinion Delivered** December 5, 2013 |
| APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-12-90] |
| V. | |
| GARY DYE and LINDA DYE | HONORABLE GARY M. ARNOLD, JUDGE |
| APPELLEES | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Diamante, LLC (Diamante), appeals the orders of the Saline County Circuit Court granting the motion of appellees, Gary Dye and Linda Dye, for class-action certification. This order is immediately appealable pursuant to Ark. R. App. P.–Civ. 2(a)(9) (2012). On appeal, Diamante argues that the circuit court abused its discretion by (1) ruling that the class counsel is qualified and is not a likely, necessary witness; (2) ruling that the class representatives met the adequacy requirement and that they do not have a conflict of interest in representing members of the class whose dues were deferred; (3) ruling that all class members have a common claim when the restrictive covenant filed in connection with the lot owned by the class representatives is different than the restrictive covenant of other class members; (4) including members of the class whose dues are currently being deferred; (5) including members of the class who signed documents agreeing to arbitrate controversies with Diamante; and (6) certifying a class including as members of the class those whose dues

were deferred.

When we review a circuit court's decision to grant or deny class certification, we will reverse only when the appellant can demonstrate an abuse of discretion. *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, ___ S.W.3d ____. In this interlocutory appeal, we do not consider the merits of the underlying claims as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *Id.* This court thus views the propriety of a class action as a procedural question. *Id.* The six requirements for class-action certification as stated in Rule 23 of the Arkansas Rules of Civil Procedure are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Id.*

Diamante operates a private-membership golf club located in Hot Springs Village. There are approximately 450 privately owned lots around the golf course and clubhouse. The lots are in two subdivisions, the Diamante Subdivision and the Diamante Villas Subdivision. Supplemental declarations of covenants and restrictions (supplemental declarations) are on file in the Saline County land records. The supplemental declarations run with the land and create certain obligations and restrictions referred to as "tie-in rights." Among those tie-in rights are requirements that lot owners become "Full Golf Members" of the Diamante Country Club (the Club); pay monthly dues to the Club; and grant Diamante a lien and foreclosure right with respect to the lot that arises in the event of failure to pay the monthly Club dues.

Appellees filed a declaratory-judgment action, asking the circuit court to declare the

SLIP OPINION

tie-in rights unenforceable. They alleged that Diamante owed them a duty to collect monthly dues from all Full Golf Members, but had failed to collect those dues from "up to 100 Diamante and Diamante Villa lot owners." The appellees asserted that the failure to collect dues made the tie-in rights unenforceable because (a) Diamante committed a material breach of its duty owed to members; (b) there was a failure of consideration; (c) the "material breaches" by Diamante equated to a failure to operate in accordance with the plan of development set out in the supplemental declarations; (d) Diamante violated the implied law to act in good faith and fair dealing in the performance of its duties under the supplemental declarations; (e) the doctrine of "unclean hands" would bar enforcement of the tie-in rights at equity; (f) inequitable conduct in selectively collecting dues would bar enforcement of the tie-in rights in equity; (g) Diamante's seeking to enforce the tie-in rights while it is materially breaching them is "unconscionable"; (h) selective enforcement by Diamante is not permitted by the plan of development and supplemental declarations; (I) the rule against perpetuities makes the tie-in rights unenforceable and void; (j) the tie-in rights constitute an unreasonable restraint on alienation on the appellees' home and lot; (k) Diamante's failure to satisfy "virtually the only provision" in the supplemental declarations that placed a duty on the Club caused the tie-in rights to be unenforceable due to lack of mutuality of obligation; and (l) Diamante has "abandoned" the plan of development by not collecting the full monthly dues. The appellees subsequently amended their petition to add that Diamante had also abandoned the plan of development by not keeping the golf course exclusively reserved for dues-paying members.



Appellees then filed a motion for class certification. They proposed to define the class as

> Current owners of Diamante Lots, improved or unimproved, located in the Diamante and Diamante Villas subdivisions [excluding from the Class: RESPONDENT, entities affiliated with Defendant Cooper Land Development, Inc., purchasers of about 100 'Deferred Lots,' and owners of the six lots for which foreclosure cases brought by RESPONDENT are on file and pending.]

Appellees asserted that class certification was proper because

> 1) the class is so large that joinder of all members is impracticable, 2) the legal and factual defensive issues to be determined are common to all members of the proposed class, 3) the defenses of the PETITIONERS as representative parties are typical of the defenses of the class, and 4) the PETITIONERS as representative parties will fairly and adequately protect the interests of the class.

Appellees argued in a memorandum to the circuit court that was filed in support of its motion for class certification that all the requirements of Arkansas Rule of Civil Procedure 23 were met by the proposed class. These requirements are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) superiority, and (6) predominance. The memorandum then set forth how each of the six requirements were met. First, they asserted that the likely class of approximately 330 members should be found to be more than enough class members to satisfy the numerosity requirement. Second, they asserted that the commonality requirement should be found to have been met because the question of "enforceability" of the tie-in rights and whether Diamante's conduct affected its right to enforce them is common to all members of the proposed class. Third, appellees asserted that the typicality requirement should be found to have been met because there are no varying fact patterns for the court to deal with, as the claims involved identical provisions in the Plan of Development, and all the material

SLIP OPINION

facts relating to Diamante's conduct provide all class members with the same defenses to enforceablity. Fourth, they asserted that the adequacy requirement should be found to have been met because class counsel and the class representatives will fairly and adequately represent the interests of the class because there are no known conflicts between the representatives and other class members, the appellees have more than a minimal interest in the action, the appellees are familiar with the practices being challenged, and they have the ability to assist in decision-making as to the conduct of the litigation. Also, they asserted that the class counsel is presumed to be adequate. Fifth, appellees asserted that the superiority requirement should be found to have been met because it is more "judicially efficient" to take up the common question and defenses than to file 330 separate actions. Sixth, they asserted that the predominance requirement should be found to have been met because "issues related to the identical provisions of the Supplemental Declarations and identical conduct of [Diamante] are at the heart of the common defenses by all members of the proposed class."

After a hearing in which Diamante contested each of the six requirements for class certification and moved for the disqualification as a necessary witness proposed class counsel, Jim Armogida, and after entertaining a motion to reconsider, the circuit court certified the class. The circuit court defined the class as:

> Current owners of the 450 lots, improved or unimproved, located in the Diamante or Diamante Villas subdivisions, excluding the following owners: Respondent, Cooper Land Development, Inc. and its affiliates.

In its order granting class certification, the circuit court made extensive findings of fact. It

SLIP OPINION

found that none of the reasons alleged by the appellees as justification for declaring the tie-in rights unenforceable are based on the acts of the appellees or other property owners in the Diamante and Diamante Villas subdivisions. Further, the circuit court found that all of the reasons alleged for unenforceability pertain not only to the appellees but also to all the members of the proposed class. The circuit court also found that the proposed class exceeded 330 property owners and that the proposed class was clearly defined and unambiguous.

The circuit court found that the agreement to arbitrate claims against the Club that was found in several of the proposed class members' Club membership agreements was no impediment to class certification. It stated that the declaratory-judgment action before it was "no forum" for [Diamante] to attempt to require any of the three groups (defined by three different versions of the Club membership applications), except the Dyes, to submit to arbitration. Furthermore, the circuit court found that various forms of membership applications did not disqualify any of the three groups from class membership. Additionally, the circuit court noted that it had previously considered and denied Diamante's motion to compel arbitration, that the bylaws had no bearing on the ability of a Club member to be a member of the class, and that the three different versions of the membership form have "no relevance" to numerosity, commonality, or predominance because the supplemental declarations which all property owners in the proposed class are subject to was the focus of the action.

The circuit court also made the following conclusions of law with regard to the requirements of Arkansas Rule of Civil Procedure 23. First, the circuit court stated that the

SLIP OPINION

numerosity requirement was met because the proposed class was more than 330 lot owners, which made joinder impracticable. Second, the circuit court stated that the commonality requirement was met because the acts by Diamante established a common question of enforceability "totally independent of any actions by [appellees] and members of the proposed class, but affects them all." Third, the circuit court stated that the typicality requirement was met because the "focus" of the lawsuit was the conduct of Diamante and the same legal theory advanced by the appellees related to that conduct.

Fourth, the circuit court stated that the adequacy requirement was met. The three requirements of Rule 23(a)(4), (1) class counsel be qualified, experienced, and generally able to conduct the litigation and that the class is generally "pleased" with his representation; (2) that there be no evidence of collusion or conflicting interest between the class representative and the class; and (3) that the class representative must display some minimal interest in the action, familiarity with the practices challenged, and ability to assist in decision making regarding the conduct of the litigation, were established. The circuit court noted that in Arkansas law there is a presumption that class counsel meets the adequacy requirement and that no special training is required. It also noted that Diamante did not raise any questions about the "capability or competence" of class counsel.

While acknowledging Diamante's "necessary witness" argument, the circuit court stated that the appellees did not share Diamante's concerns and found that there had been "nothing presented to this court which even remotely brings into question any need for [proposed class counsel] to be a necessary witness or that he has any conflict of interest with

SLIP OPINION

his clients." Further, the circuit court noted that the appellees testified that they are "very happy" with class counsel and "it has been apparent in court proceedings to date that [class counsel's] background and his familiarity with the facts and circumstances in this case due to his ownership of a lot are of great benefit to his clients and not detrimental." Additionally, the circuit court found the Dyes met the requirements to serve as class representatives because in several court appearances, they displayed "interest, familiarity, and the ability to assist in decision making."

Fifth, the circuit court found the superiority requirement—that a class action be the most efficient way of handling the case and fair to both sides—had been met because there is judicial efficiency in having the ultimate determination on the merits potentially cover up to 330 class members and the determination will relate to a common document filed in the land records of all the lot owners in the proposed class. It found no unfairness to Diamante, or alternatively, if it existed, it was "greatly outweighed by the obvious fairness to the class members." The circuit court found "no real problem" with manageability of the class. Finally, the circuit court found that the predominance requirement had been met because "issues related to identical provisions of the supplemental declarations and identical conduct of [Diamante] common to all the proposed class are at the heart of this declaratory judgment action." It noted further that there are "really no apparent issues in the action on the merits before this court which are not common to the proposed class, and in this type of situation the 'predominance' requirement appears to be a non-factor, as a matter of law." Diamante timely filed a notice of appeal.

SLIP OPINION

On appeal, Diamante first argues that the circuit court abused its discretion by ruling that class counsel, an owner of a lot in one of the Diamante subdivisions, is qualified and is not a likely, necessary witness. Citing *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995), Diamante asserts that class counsel, as a class member, will be a necessary witness to testify about a "membership document" in his file; whether it was his handwriting on the document that would indicate his awareness of the provisions in the bylaws regarding arbitration; whether he had signed a contract deferring his own dues for a year; and his knowledge of alleged breaches of its duty by Diamante.

To the extent that Diamante is arguing that the circuit court erred in refusing to disqualify the class counsel because he was likely to be a witness, we note that Rule 2(a)(8) of the Arkansas Rules of Appellate Procedure–Civil provides that orders disqualifying an attorney are immediately appealable, not orders denying disqualification.[1] Even so, adequacy

---

[1] In *Zearley,* an appeal from a class certification, this court held that the trial court abused its discretion in allowing class counsel to testify at the certification hearing; however, the case before us is clearly distinguishable. Class counsel in *Zearley* was not a class member and actually testified in an effort to try to establish how a synthetic bone material resulted in a medical injury that would be best addressed in a class-action lawsuit. Here, class counsel, who is a class member, did not testify and was not called by Diamante to testify. Also, in the circuit court's order, there is a specific finding that Diamante did not clearly articulate the need for class counsel's testimony at the time it made its ruling. It likewise did not foreclose the possibility of disqualifying counsel at a later stage of the proceedings if it became necessary.

Furthermore, disqualification of an attorney-witness is not automatic. In *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 158 S.W.3d 147 (2004), this court noted that while disqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship, it is a drastic measure that should be imposed only where clearly required by the circumstances. Further, the *Weigel* court stated that the Arkansas Rules of Professional Conduct apply to disqualification decisions and that Rule 3.7 specifically addresses the situation. It provides:

9

SLIP OPINION

of legal representation is a requirement of class certification and to that extent, this court has addressed the merits of counsel's qualification. Whether class counsel is qualified and will fairly and adequately protect the interests of the class is addressed by Arkansas Rule of Civil Procedure 23(a)(4). It specifically requires that the representative parties and their counsel be able to adequately protect the interests of the class. This court has previously interpreted Rule 23(a)(4) to require three elements: (1) the representative counsel must be qualified, experienced, and generally able to conduct the litigation; (2) there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the

---

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case;
>
> or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

In actuating the considerations in Rule 3.7, the *Weigel* court adopted a three-part test that requires the party seeking disqualification of an attorney-witness to prove:

> (1) that the attorney's testimony is material to the determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client.

*Weigel*, 356 Ark. at 625, 158 S.W.3d at 153. Here, the testimony that Diamante expects to elicit from class counsel, as noted previously, relates primarily to uncontested issues. Moreover, at this point in time, Diamante has not proven that the evidence was unobtainable elsewhere or that the testimony may be prejudicial to the class.

practices challenged, and ability to assist in decision making as to the conduct of the litigation. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 2009 Ark. 151, 300 S.W.3d 487.

Diamante has not directly challenged class counsel's qualifications, here or before the circuit court. We have held that absent a showing to the contrary, we may presume that the representative's attorney will vigorously and competently pursue the litigation. *Id.* Diamante's argument here only asserts that the circuit court erred in accepting as evidence class counsel's qualifications via an affidavit. However, as noted previously, the circuit court's conclusion of law regarding class counsel rested upon the presumption in Arkansas law that class counsel meets the adequacy requirement and that no special training is required. It noted that Diamante did not raise any questions about the "capability or competence" of class counsel. Accordingly, we cannot say that the circuit court abused its discretion in finding class counsel adequate.

Finally, Diamante asserts that the circuit court erred by not allowing into evidence a document signed by class counsel, which showed that he was deferring his dues for one year. The document is not relevant to the overarching question of whether it would be equitable to enforce the tie-in rights given Diamante's conduct.

Diamante next argues that the circuit court erred in ruling that the class representatives met the adequacy requirement and that they do not have a conflict of interest in representing members of the class whose dues were deferred. It claims that the Dyes are dues-paying members and "the main reason appellees are suing [Diamante] is because it is deferring dues for some lot owners." Accordingly, Diamante contends that because of this conflict of

11



interest, the appellees cannot fairly and adequately represent the class members whose dues are being deferred. Diamante argues further that the class representatives testified that they believed they had been harmed by the dues being deferred, which is an "inherent conflict of interest." Finally, Diamante contends that the class representatives indicated that class counsel was the person primarily making the decisions, which makes them inadequate as class representatives.

Diamante mischaracterizes the litigation. It does not seek to enjoin the practice of deferring dues, or to force Diamante to perform its collection "duty." It asks for the circuit court to declare whether Diamante's past practices, including not collecting dues, made it inequitable to enforce the tie-in rights against all lot owners. As the circuit court found, because every lot in the Diamante subdivisions is burdened by the supplemental declarations, there is no conflict between the class representatives and those proposed class members who are currently enjoying deferred-dues payments. Further, there is no requirement that class representatives understand and direct every aspect of the litigation. *McGinnis*, *supra*. Rule 23.4 requires only "a minimal level of interest in the litigation and a familiarity with the practices challenged." *McGinnis*, 2009 Ark. 151 at 13, 300 S.W.3d at 495. As noted previously, the circuit court found that the Dyes met the requirements to serve as class representatives because, in several court appearances, they displayed "interest, familiarity, and the ability to assist in decision making." Given these express findings, we hold that the circuit court did not abuse its discretion in concluding that the adequacy requirement had been satisfied.

SLIP OPINION

Diamante next argues that the circuit court abused its discretion by ruling that all class members have a common claim when the restrictive covenant filed in connection with the lots owned by the class representatives is different than the restrictive covenant of other class members. It contends that many of the supplemental declarations are "slightly different." Without specifying how, it contends that the "slightly different" language "may make the obligation of the appellees different from other lot owners."

Satisfying the commonality requirement of Arkansas Rule of Civil Procedure 23(a)(2) requires a determination by the circuit court that there are questions of law or fact common to the class. *Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001). Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common; the commonality requirement is met if there is only a single issue common to all members of the class. *Id.*

Diamante's argument conflicts with the circuit court's finding that commonality rested not on any conduct on the part of the appellees but on the conduct of Diamante, whose alleged material breaches of the supplemental declarations, which are common to all members of the proposed class, have given rise to the question of whether the tie-in rights are enforceable. Accordingly, because the main claim involved conduct by Diamante that affected the enforceability of tie-in rights that affect all class members, we cannot say that the circuit court abused its discretion by concluding that the commonality requirement was met. *Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995).

Diamante further argues that the circuit court abused its discretion by including

13

SLIP OPINION

members of the class whose dues are currently being deferred. It asserts that they do not have standing to seek declaratory judgment in this case because they do not have a justiciable controversy. Citing *Faigin v. Diamante*, 2012 Ark. 8, 386 S.W.3d 372, it asserts that lot owners who are enjoying deferred-dues payments have no issues in common with lot owners who are currently being forced to pay Club dues. We disagree.

In *Faigin*, we upheld a circuit court's determination that commonality was not satisfied. *Id*. There, the cause of action began when Diamante filed a complaint in foreclosure to enforce its lien on the Faigins' property. *Id*. In opposing the foreclosure, the Faigins attempted to certify a class consisting of all the Diamante lot owners for the purpose of challenging the same foreclosure rights that are at issue in the case before us. *Id*. However, the record in *Faigin* reflected that, in the proposed class, there were only seven lot owners whose lots were in foreclosure. *Id*. This court noted that because the Faigins' lot was in foreclosure, their defenses to the complaint in foreclosure were not common to the overwhelming majority of the proposed class, who were not in foreclosure. *Id*. We stated:

> The fact that other lot owners in the subdivisions might share one or more concerns with the Faigins is not the same as sharing an element in the underlying cause of action. The procedural posture of this case requires that the members of the proposed class share a common defense to the complaint in foreclosure but, as the circuit court found, they do not.

*Id*. at 7, 386 S.W.3d at 377. Here, as the appellees note and the circuit court found, all 450 lots of the Diamante subdivisions are subjected to the tie-in rights and all the proposed class members are burdened by the supplemental declarations that run with their land. Further, the circuit court stated that the focus of the lawsuit was Diamante's conduct. Accordingly,



the entire class shares the factual predicate that allows them to raise the equitable defenses to enforcement that have been recited above. Therefore, our decision in *Faigin* does not control the case before us.

Diamante next argues that the circuit court abused its discretion by including members of the class who signed documents agreeing to arbitrate controversies pursuant to the Diamante bylaws. By so agreeing, Diamante contends that the claims or defenses cannot be "typical" of the claims and defenses of the appellees. It asserts that it will have to determine which class members' claims are subject to arbitration, which it believes will leave the superiority and predominance requirements unsatisfied.

Typicality requires that a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members and may be redressed by pursuing the same legal theory. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. The essence of the typicality requirement is the conduct of the defendants and not the varying fact patterns and degree of injury or damage to individual class members. *Id.*

Here, the differences in the bylaws and Club membership agreements with regard to arbitration were found by the circuit court to be of no effect on the pending litigation. Furthermore, at the time that the circuit court granted class certification, it had already heard

and rejected Diamante's motion to compel arbitration.[2] Moreover, as the circuit court noted, the case before us involves a judicial determination of whether Diamante's conduct has made it inequitable to enforce the tie-in rights. Accordingly, we hold that the circuit court did not abuse its discretion in certifying this class.

Diamante next argues that the circuit court abused its discretion by certifying a class that includes members whose dues were deferred. It contends that a property owner whose dues have been deferred does not have a claim against it and is not harmed by other lot owners entering into similar agreements. Citing *State Farm Fire & Casualty Co. v. Ledbetter*, 355 Ark. 28, 129 S.W.3d 815 (2003), it contends that a class should be defined to include only those individuals who are actually harmed by the defendant's conduct.

This argument fails because it depends on the faulty factual predicate that the cause of action exists to compel Diamante to collect Club dues. Compelling that activity, or seeking damages for its failure to do so has never been an objective in this lawsuit. As noted previously, the circuit court found that the objective in this case is for the circuit court to declare the tie-in rights, which every lot is subjected to, unenforceable. The class is defined by the owners of lots in the Diamante subdivisions that are burdened by the supplemental declarations. Accordingly, Diamante's reliance on *Ledbetter* is misplaced. Unlike *Ledbetter*, the class definition in this case would not require the circuit court to inquire into the facts of each lot owner's agreement with the Club in order to determine whether that person is

---

[2] On November 6, 2013, which was prior to submission of this case, that ruling was affirmed by our court of appeals. *Diamante v. Dye*, 2013 Ark. App. 630, ___ S.W.3d ____.

SLIP OPINION

SLIP OPINION

a suitable class member.

Class definition requires only a class description that is definite and administratively feasible to determine whether a particular person is a member. *Baptist Health v. Hutson*, 2011 Ark. 210, 382 S.W.3d 662. As noted previously, the circuit court defined the class as current owners of lots in the Diamante and Diamante Villas subdivisions not including Diamante itself and entities affiliated with Cooper Land Development, Inc., and the six lots currently in foreclosure. We cannot say that the circuit abused its discretion in certifying a class with this definition.

We also reject Diamante's contention that the circuit court erred in certifying the class because it failed to satisfy the predominance requirement. Predominance is that requirement of Rule 23(b) that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. *Hutson, supra.* As we noted previously, the circuit court found that the "issues related to identical provisions of the supplemental declarations and identical conduct of [Diamante] common to all the proposed class are at the heart of this declaratory judgment action." Diamante's identification of some extraneous facts relating to differences in membership agreements do not change the circuit court's finding of the factual basis for the lawsuit, and we cannot say that the circuit court abused its discretion in making a conclusion of law that the predominance requirement had been met.

Likewise, Diamante does not effectively challenge the circuit court's conclusion that



the superiority requirement had been met because there is judicial efficiency in having the ultimate determination on the merits potentially cover up to 330 class members. Superiority under Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is satisfied if a class action is the more "efficient" way of handling the case, and it is fair to both sides. *Hutson, supra.* Case law has also recognized a requirement that the class be "manageable." *Id.* As we noted in *Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879, the avoidance of multiple suits lies at the heart of any class-action decision. Here, Diamante relies on the existence of provisions in the Club membership agreements requiring arbitration of disputes to assert that the circuit court would be required to determine which class members' claims are subject to arbitration as a basis for asserting that there was no judicial economy in allowing a class-action lawsuit. However, in making this argument, it ignores the factual findings by the circuit court that the arbitration provisions did not apply to the declaratory-judgment action before it. Accordingly, we cannot say that the circuit court abused its discretion in concluding that the superiority requirement had been met.

Lastly, Diamante argues that the last change to the class definition was improper because it was not made by motion. We cannot find in the record where this issue was raised and ruled on by the trial court, and we decline to consider it. This court will not address an argument on appeal if it has not been argued before the circuit court or if a party has failed to obtain a ruling from that court. *Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1.

We conclude that the circuit court did not abuse its discretion in granting class certification. Accordingly, we affirm.

Affirmed.

*McMillan, McCorkle, Curry & Bennington, LLP*, by: *Philip McCorkle*, for appellant.

*Terry P. Diggs, Lawyer, P.A.*, by: *Terrry P. Diggs*, for appellees.

SLIP OPINION